# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MICHAEL N. KELSEY,

                             Petitioner,

      v.                                    9:21-CV-348
                                                  (MAD/ATB)

DONNA LEWIN, Hudson Correctional
Facility Superintendent,

                           Respondent.

MICHAEL N. KELSEY, Petitioner, pro se
PAUL B. LYONS, AAG, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, while incarcerated at Hudson Correctional Facility,[1] filed this petition pursuant to 28 U.S.C. § 2254, challenging a May 12, 2016 judgment of conviction after a St. Lawrence County Court jury found him guilty of Sexual Abuse in the First Degree, Attempted Sexual Abuse in the First Degree, Forcible Touching, and two counts of Endangering the Welfare of a Child. (Petition ("Pet.") at 1) (Dkt. No. 1).

---

[1]Plaintiff was released from DOCCS confinement in May 2022. (Dkt. No. 39). He appears to maintain parole status as of the date of this report-recommendation, with a maximum expiration date for supervision of August 2031. *See* https://nysdoccslookup.doccs.ny.gov/. Accordingly, and respondent does not dispute that, plaintiff continues to satisfy the statutory requirement of "custody" relative to federal habeas corpus jurisdiction. *See Maleng v. Cook*, 490 U.S. 488, 491 (1989); *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994); *see also Plato v. Morrissey*, 638 F. Supp. 2d 338, 343 (W.D.N.Y. 2009) (noting that "the Supreme Court and the Second Circuit have recognized that a prisoner who has been released from physical custody but has been placed on parole/supervised release remains 'in custody' for habeas purposes where such status results in restrictions on freedom and liberty").

Petitioner was sentenced to serve seven years imprisonment, followed by ten years of post-release supervision.

On August 24, 2016, petitioner filed a post-trial motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law ("CPL") § 330.30.  (State Court Record ("SR") 31-107).[2]  The trial court denied petitioner's motion on October 18, 2016.  (SR 108-10).

On direct appeal to the Appellate Division, Third Department ("Appellate Division"), petitioner filed a counseled brief as well as a pro se reply brief.  (SR 332-550, 840-79).  The Appellate Division unanimously affirmed the judgment of conviction on July 3, 2019. *People v. Kelsey*, 174 A.D.3d 962 (3d Dep't 2019) (SR 884-90).  Petitioner filed pro se papers applying for leave to appeal to the Court of Appeals, which request was denied on October 15, 2019.  *People v. Kelsey*, 34 N.Y.3d 982 (2019) (SR 996-97).

Petitioner filed a pro se coram nobis motion in the Appellate Division on August 4, 2019, which was denied on January 23, 2020.  (SR 998-1005, 1011-12).  Petitioner applied for leave to appeal to the Court of Appeals (SR 1013-21), and the Court of Appeals denied leave on December 28, 2020.  *People v. Kelsey*, 36 N.Y.3d 973 (2020) (SR1024-25).  Petitioner filed a pro se petition for a writ of certiorari with the United States Supreme Court . (SR1026-89).  The Court denied the writ on May 3, 2021.  *Kelsey v. New York*, No. 20-7308, 2021 WL 1725238 (U.S. May 3, 2021).

On February 24, 2020, petitioner filed a motion to vacate the conviction pursuant

---

[2]The state court record contains both sealed and unsealed documents (Dkt. Nos. 29, 32).

to CPL § 440.10.  (SR 1090-92).  Judge Catena issued a Decision and Order on June 9, 2020, denying the motion in its entirety.  (SR 1714-17).  Petitioner applied to the Appellate Division for leave to appeal, and his application was denied on March 11, 2021.  (SR 1719-55, 1759-60).

Petitioner filed a pro se state habeas petition pursuant to CPLR Article 70 on November 23, 2020.  (SR 1761-1817).  The Columbia County Supreme Court denied the petition on March 16, 2021, and petitioner appealed this decision to the Appellate Division on April 11, 2021.  (SR 1820-28, 1829-33).  The Appellate Division denied petitioner's appeal on March 10, 2022, *People ex rel. Kelsey v. Lewin*, 203 A.D.3d 1366 (3d Dep't 2022), and upon leave to the Court of Appeals, the Court dismissed petitioner's appeal sua sponte on June 14, 2022, "on the ground that [petitioner] has been released[.]" *People ex rel. Kelsey v. Lewin,* 38 N.Y.3d 1054 (2022).  Petitioner's motion for reconsideration was denied on September 13, 2022.  *People ex rel. Kelsey v. Lewin*, 38 N.Y. 3d 1166 (2022).[3]

In his extensive federal habeas corpus application filed on March 24, 2021, petitioner raises a host of arguments as grounds for relief. (*See* Pet., generally). Respondent filed a response to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 27, 28, 29, 32).  For the following reasons, this court agrees with respondent and will recommend denying the petition.

---

[3]The decisions from the Appellate Division and the Court of Appeals concerning petitioner's state habeas petition are not included in the state record, as they were not issued until after the response in this matter was filed .

## DISCUSSION

### I.    <u>Relevant Facts</u>

Respondent has included a detailed description of the facts and procedural history of this case.  (Resp. MOL at 2-31) (Dkt. No. 27).  This court will summarize the relevant facts as set forth in the state court record for clarity, and will discuss specific facts as necessary in the analysis of petitioner's claims.

### A.    **Pre-Trial Proceedings**

On June 30, 2015, petitioner was charged by a grand jury in a five-count indictment filed in St. Lawrence County.  (SR 120-22).  The first count was brought pursuant to New York Penal Law § 130.65(2), and charged petitioner with committing sexual abuse in the first degree for touching DC's[4] penis while DC was asleep. (SR 120).  The second count was brought pursuant to New York Penal Law § 110.00/130.65(2), and charged petitioner with attempting to commit sexual abuse in the first degree for attempting to touch JD's penis while JD was asleep.  (SR 120-21).  The third count was brought pursuant to New York Penal Law § 130.52, and charged petitioner with forcible touching for touching DC's penis for the purpose of degrading or abusing DC, or for gratifying petitioner's sexual desire.  (SR 121).  The fourth and fifth counts were brought pursuant to New York Penal Law § 260.10(1), and charged petitioner with endangering the welfare of a child by knowingly acting in a manner likely to be injurious to the physical, mental, or moral welfare of both DC and JD.  (SR 121-22).

---

[4] The indictment identified the complainants, whom this court will identify as DC and JD, by their dates of birth and as persons known to the grand jury.  (SR 120-22).

Petitioner was arraigned on July 16, 2015, at which time he plead not guilty to the indictment. (Dkt. No. 32-1 at CM/ECF pp. 51-65). Petitioner was released under probation supervision. (*Id.* at CM/ECF p. 60). On April 12, 2016, he appeared for a court conference with retained defense counsel, Richard Portale.[5] (Dkt. No. 32-1 at CM/ECF pp. 6-10). At the conference, petitioner waived his right to a *Huntley* hearing as it related to the suppression of a controlled call between petitioner and JD's mother, which the government sought to introduce as evidence at trial. (*Id.*). The parties also discussed whether the government had satisfied its obligation to disclose all existing *Brady* material in their possession. (*Id.*). Last, defense counsel stated his understanding that the government did not, at that time, intend to make an application to introduce evidence of any prior bad acts under *Molineux* or *Ventimiglia*. (*Id.*).

## B.    The Trial

A seven day jury trial was held in St. Lawrence County Court before the Honorable Felix J. Catena,[6] commencing on May 2, 2016. (Dkt. No. 32-1 at CM/ECF pp. 84-1439 (Trial ("T") 1-807)). Prior to jury selection, Mr. Portale informed the court that petitioner, an attorney of the New York State bar in good standing, would be acting as "co-counsel" or "second chair," and would be handling some of the witnesses. (T 10-12, 22). Petitioner then delivered his own opening statement. (T 237-75). In the

---

[5]Petitioner originally retained Gary Greenwald as his defense counsel; however on October 28, 2015, petitioner substituted himself as sole attorney of record. (SR 257). Petitioner handled his own defense without assistance through March 2016, when he retained Mr. Portale. (SR 1234).

[6]For reasons not stated in the record, St. Lawrence County Judge Jerome Richards recused himself from petitioner's case prior to the trial, and was replaced by Montgomery County Supreme Court Acting Justice Catena.

middle of petitioner's opening statement, the court ruled that petitioner had "opened the door" for the prosecution to introduce, during their case-in-chief, evidence of petitioner's "prior bad acts." (T 260-61).

The prosecution presented the following evidence from five witnesses at trial, including JD and DC. JD and DC were fifteen years old at the time of the relevant crimes, and sixteen years old at the time of trial. They were close friends, and both members of the local Boy Scouts Troop 95. (T 278-81, 315-16, 386-87, 420-21, 471-73, 480, 501-02). JD and DC met petitioner through Troop 95, where petitioner was an Assistant Scout Master and leader of the "Venture Patrol"–a group of older and "higher skilled" scouts who went on "more advanced trips than the rest of the troop." (T 282-83, 286-87, 387, 377, 473-74, 479, 495-96). In August of 2014, JD was the "crew chief" of the Venture Patrol, and worked with petitioner to plan and lead trips. DC was the assistant crew chief. (T 285-86, 372-73, 473-74, 499-501). Prior to August 2014, JD and DC had a good relationship with the petitioner; however JD denied ever having a "romantic relationship" with petitioner. (T 284, 475, 494).

The Troop 95 Venture Patrol went on a 50-mile hike at Cranberry Lake in the Adirondacks from August 13 through August 20, 2014. The Scouts were accompanied by two adults, petitioner and Scout Master Tom Ricci. They drove to the excursion in two cars–JD, DC, and TN, another Scout, rode in petitioner's car. (T 286-89, 377-78, 478-81). The Scouts arrived to Cranberry Lake on August 13th at approximately 11:00 p.m. Because it was raining, they decided to sleep in the cars. In petitioner's car, petitioner slept in the driver's seat; TN slept in the passenger seat; and JD slept in the

back seat. (T 289-90, 378-79, 481-82). DC also slept in petitioner's car, on his back in the center console of the front seat, with his left foot in the driver's side foot compartment, his right foot in the passenger's side foot compartment, and his head lying on backpacks stacked in the rear. (T 290-91, 482-83). While they slept, petitioner's body was situated so that his legs were stretched out on the dashboard in a way that "pinned down" DC's left leg, to the extent that DC "couldn't pull [his] left leg out or move it that much." (T 291-92). DC fell asleep around midnight but was awakened by petitioner's "hand touching [DC's] penis" over DC's shorts. (T 291-93, 368). DC testified that he shifted to "act like [he] was waking up," but he did not want petitioner to know he was awake because he "didn't know what to do." (T 293-95). Petitioner continued to touch DC's penis over his shorts, and also attempted to put his hand under the waistband of DC's shorts, but stopped when DC "shifted." (*Id.*). DC testified that he tried to squirm, move, and roll away, but was unable to move at first because he was "pinned" by petitioner's legs. (T 295, 319, 369). Eventually, petitioner moved his leg a little so DC could pull his left leg out of the driver's side foot compartment. DC was then able to roll over. (T 294-96, 369). DC testified that petitioner touched his penis for "probably around 10 or 20 minutes." (T 319, 350, 368). They did not speak to each other during the incident. (T 295). In the morning, DC moved into the back seat with JD. (T 296).

On the night of August 17th, the Scouts, with petitioner and Tom Ricci, reached an area called "High Falls" where they all slept in a lean-to together. (T 486, 489). JD was sleeping next to petitioner. (*Id.*). During the night, JD "was awoken by

[petitioner] putting his hand down [JD's] shorts and trying to touch [JD's] penis." (T 485-86). JD realized that petitioner was trying to reach down his pants, so JD "batted" petitioner's hand away. (T 487). At that point, petitioner "tried again," so JD "just moved" petitioner's hand away, zipped up his sleeping bag, and turned his back to petitioner. (T 487). JD attempted to wake up another Scout that was sleeping next to him to ask for help, but that Scout "didn't really understand what was going on." (T 488). The next morning, JD was sitting by himself when petitioner approached him and said, "I'm sorry if I made you feel uncomfortable last night, and sometimes I do stupid things." (T 489-90). Petitioner also told JD that he "made a mistake." (T 490).

Neither DC nor JD immediately disclosed these incidents to anyone, and they continued to interact with petitioner on subsequent occasions, including on various "cliff jumping" and "caving" excursions in the months that followed the Cranberry Lake trip. (T 297-98, 323, 334-39, 347-49, 364-65, 491, 498-99, 506, 509-11, 521-22, 550-52).

In September 2014, DC and JD attended a sleepover at a friend's house. There, they had a private conversation during which DC stated that petitioner had "touched" DC's penis during the Cranberry Lake trip. JD then disclosed to DC that petitioner had "tried to touch" JD's penis during the same trip. (T 298-300, 492). DC and JD decided to disclose petitioner's conduct to their Assistant Scout Master, Chris Marsella. (T 300-01, 333, 492-93). JD and DC confided in Marsella during a hike in late October. (T 301-02, 333, 493, 511-12, 526-27). Marsella stated that he would let JD and DC choose when to tell their parents about petitioner's abuse, though he encouraged them

to do so.  (T 547-48).

In December 2014, JD's mother, LD, became concerned about how petitioner was coping with his loss in the N.Y. State Assembly election.  (T 389-90, 423, 431-32). On December 13, 2014, LD sent a text message to petitioner asking if he "wanted to get together to chat." (T 389-90, 447).  When JD learned about LD's plans to have coffee with petitioner, JD decided to tell his mother what happened on the Cranberry Lake trip.  (T 390-94, 441-43, 446-47, 530-31, 546-47). After JD spoke to LD, she contacted the police.  (T 393-94, 442-49).  JD and DC were separately interviewed on videotape by the state police, and they also gave written depositions.  (T 308-11, 313-15, 453-58, 512-15).  On December 15, 2014, LD conducted a controlled phone call with the petitioner at the request of the state police.  (T 395-96, 399-400, 424, 455-60).  A copy of the controlled call was admitted into evidence and played for the jury.  (T 416).

With respect to petitioner's "prior bad acts," the prosecution presented evidence that petitioner had "grabbed" JD's penis while they were in an outdoor heated pool on a Troop snowshoeing trip in 2013.  (T 476-77).  JD and DC also testified that petitioner introduced them to a game called "padiddle," which they played on car trips.  During the game, each passenger would have to hit the ceiling and say "padiddle" when they saw a car with only one headlight.  The last person to do so would have to remove an article of clothing.  (T 284-86, 339, 475-76).  JD and DC testified that they played padiddle in petitioner's car on the trip to Cranberry Lake.

Petitioner testified in his own defense.  Petitioner denied grabbing JD's penis in 2013, and also denied that anyone removed their clothing while playing "pididdle" in

9

the car with him. (T 888-93). He further denied the allegations by DC and JD of sexual abuse during the Cranberry Lake trip. With respect to DC, petitioner testified that when they arrived on the night of August 13th, petitioner got his sleeping bag from the trunk, got into the driver's seat of his car, and went to sleep. (T 897). He testified that he was the only one in the car when he fell asleep, and he did not know where the others were. (T 897-98, 912). Petitioner did not attempt to touch DC, nor did he come into any physical contact with DC that night. (T 913-14). When petitioner woke up the next morning, DC was sleeping on the arm rest with a leg on either side of the console. (T 914).

Petitioner also denied abusing JD. On the fourth night of the Cranberry Lake trip, petitioner "wrestled" in the lean-to with some of the Scouts, including JD. (T 919-20). At one point, JD "rolled over so that his groin was on [petitioner's] hand, and [petitioner] froze." (T 920). Petitioner looked at JD and said, "this is awkward." (T 920, 978-79). JD "didn't move," so petitioner "quickly" pulled his hand away, "stopped wrestling and walked away." (T 920, 979). Petitioner believed that JD was making a "pass" at him. (T 920, 974).

On the fifth night of the trip, they all slept in a lean-to. Petitioner slept between JD and DC. (T 921-23). Petitioner woke in the middle of the night, because JD's head was on petitioner's chest, and JD was "straddled next to petitioner," which "bothered" him. (T 923-24). Petitioner "pushed [JD] away." (T 924, 926-27). Petitioner was so "disturbed by this incident that he got out of his sleeping bag, grabbed a blanket from his backpack, and went down to the falls." (T 924). Petitioner denied that he reached

for or made any attempt to touch JD's penis. (T 925, 977-78). Petitioner returned to the lean-to at daybreak, and everyone was still asleep. He proceeded to boil water for breakfast. (T 924-25). Later that morning, petitioner went up to JD and "apologized," saying "I don't know what happened last night. I still like you. Sorry." (T 925-27).

JD and DC had multiple communications and interactions with petitioner after the Cranberry Lake trip. (T 931-32, 934-36). On cross-examination, petitioner was impeached with incriminating statements he made in subsequent emails to Scout Master Rich Robbins in the weeks following JD and DC's accusations. (T 263, 946-47, 956-58, 962-64). In particular, petitioner wrote to Robbins on December 8, 2014, asking him to deliver a message to JD:

> I need you to know that I'm not a bad person and that I never wanted any harm to come to you. I'm sick, but I'm doing my best to get better. You did the right thing in coming forward, and I understand if you want to hate me. I'm truly sorry. Please remember me for the good that I tried to do for you and for others and forgive me for my faults and weaknesses.

(T 967-68). Petitioner testified that he had believed if he gave an apology, he would be allowed to re-enter the troop. (T 1016). Petitioner also testified that he was under extreme mental stress between October and December 2014. (T 937-38, 947). He was prescribed an anti-depressant in November 2014, which provided some short-term relief of his mental health symptoms. (T 947, 959-62, 994-95, 959-60, 994-95). At the time of the controlled call with LD, petitioner was "between medications" and "noticing bizarre behaviors" in himself that made him think that he was mentally ill. Accordingly, he was "not sure what to believe." (T 946). Petitioner testified to various

innocent explanations for the incriminating statements he made to LD during the controlled call during his direct testimony.  (T 936-56, 990-91).

In addition to petitioner, the defense called several other witnesses including two former members of the Venture Patrol, MR and DR.  (T 564-72, 700-03).  Both testified that they had played the "padiddle" game in petitioner's car, but had never seen anyone take off their clothes.  (T 586-87, 707-08).  MR also testified that he never saw any physical contact between petitioner and JD on the 2013 snowshoeing trip.  (T 703-07).  Furthermore, MR was on the Cranberry Lake trip and testified, among other things, that JD had not been sleeping next to petitioner on the night at issue.  (T 744-45).  TR, who is MR and DR's father, also testified on behalf of the defense.  TR was an Assistant Scout Master in August of 2014, and among other things testified that petitioner had an "exemplary" reputation in the Scouting community.  (T 835-37).

The jury found petitioner guilty of all charges.  (T 1349-50).

## II.    **Generally Applicable Law**

### A.    **Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")**

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v.*

*Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182  (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original).  A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case.  *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).  Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012).  Instead, circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ.  *White v.*

*Woodall*, 572 U.S. 415, 422 n.3 (2014).

**B.    Exhaustion**

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust

available state remedies, . . . thereby giving the State the opportunity to pass upon and

correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S.

27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation

and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly

present" his claim in each appropriate state court, including the highest court with

powers of discretionary review, thereby alerting that court to the federal nature of the

claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court

without citing 'chapter and verse' of the Constitution, including '(a) reliance on

pertinent federal cases employing constitutional analysis, (b) reliance on state cases

employing constitutional analysis in like fact situations, (c) assertion of the claim in

terms so particular as to call to mind a specific right protected by the Constitution, and

(d) allegation of a pattern of facts that is well within the mainstream of constitutional

litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007)

(quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state

court, petitioner's claims are then "deemed" exhausted, but barred by procedural

default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The merits of such a

procedurally defaulted claim may not be reviewed by a federal court unless the

petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

### C.    Adequate and Independent State Ground Doctrine

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*. When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, additional concerns come into play. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Whitley v. Ercole,* 642 F.3d 278, 286 (2d

Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted)).

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

**DISCUSSION**

III.  **Legal Sufficiency**

Petitioner asserts that his convictions were based on legally insufficient evidence. (Pet. MOL at 6-12) (Dkt. No. 1-1).  Petitioner contends, among other things, that (1) he could not have sexually abused DC under the terms of the relevant penal statute, because DC was only pretending to be asleep during the assault, and therefore was not "physically helpless," (2) JD could not have been physically helpless if he was able to swat petitioner's hand away, (3) the victims' testimony was inconsistent, and (4) the victims had continued contact with petitioner.

At the outset, the court agrees that many of petitioner's legal sufficiency claims are either unexhausted or barred by an adequate and independent state law ground.  The legal sufficiency claims asserted by petitioner in his direct appeal were limited to those concerning the victims' subsequent interactions with petitioner, as well as the purported inconsistencies in the victims' testimony.  (SR 366-68).  Because petitioner failed to properly exhaust his other record-based legal insufficiency claims on direct appeal, and no longer has a venue in which to raise them, they are deemed exhausted but are barred by procedural default.  In order to overcome this procedural bar, the petitioner must show (1) both cause for failing properly to raise the claim in state court and prejudice resulting from the alleged constitutional error, or (2) that the failure to address the claim on habeas would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722 (1991).

As the respondent correctly observes, petitioner's ineffective appellate counsel claim cannot serve as the "cause" for his failure to raise these claims in his direct

appeal, because petitioner did not exhaust such a claim in state court.  *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[A] claim of ineffective assistance . . .  must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks omitted).  Petitioner has not otherwise established cause, and "given the absence of cause, this Court need not address the prejudice." *Gomez v. Brown*, 655 F. Supp. 2d 332, 345 (S.D.N.Y. 2009).  Moreover, petitioner has not established any fundamental miscarriage of justice.

To the extent petitioner raised legal sufficiency claims on direct appeal regarding the inconsistency of the victims' testimony and their continued contact with the petitioner, the Appellate Division denied these claims as unpreserved because petitioner "did not move for a trial order of dismissal."  *Kelsey,* 174 A.D.3d at 962 (citations omitted)*.*  Indeed, counsel expressly waived the motion for a trial order of dismissal, which is required in New York to preserve a legal sufficiency claim.  (T 1019). *See Velez v. Cunningham*, No. 09-CV-6506, 2013 WL 5272953 (S.D.N.Y. Sept 17, 2013) (reasoning that habeas review of legal sufficiency claim was foreclosed where, "the appellate court determined that [p]etitioner procedurally defaulted this claim because he did not preserve [it] for appellate review by moving for a trial order of dismissal") (citation omitted)); *see also Garvey v. Duncan,* 485 F.3d 709, 714-15 (2d Cir. 2007).  Accordingly, the legal sufficiency claims raised in petitioner's direct appeal are barred from habeas review on adequate and independent state law grounds.  Petitioner has failed to establish cause and prejudice, or a fundamental miscarriage of justice that would excuse this procedural default.  Although petitioner argued on direct appeal that trial counsel was ineffective for failing to preserve this claim, the court agrees with the

Appellate Division's ruling that such claim is meritless, as further discussed below. Accordingly, petitioner's ineffectiveness claim cannot serve as the cause to excuse his procedural default. *See Gomez v. Brown*, 655 F. Supp. 2d at 356 ("In order to use ineffective assistance of counsel as cause for procedural default, the ineffective assistance claim itself must be both exhausted and meritorious.") (citations omitted).

Even if petitioner's legal sufficiency claims were properly exhausted and not procedurally barred, the court agrees that they are also meritless. In assessing a petitioner's request for habeas relief, "the critical inquiry on review of [a claim challenging] the sufficiency of the evidence . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also McDaniel v. Brown,* 558 U.S. 120, 132-33 (2010) (reaffirming standard).

In so doing, the reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (internal quotation marks and citations omitted); *see also Cole v. Miller,* No. 9:19-CV-01093 (JKS), 2021 WL 1267802, at *5 (N.D.N.Y. Apr. 6, 2021) ("[The reviewing court] may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inference, or considered

19

the evidence at trial."). A habeas petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

Based on the record presently before this court, the testimony and other proof presented at trial provided sufficient evidence to sustain petitioner's convictions, and petitioner is not entitled to habeas relief on the basis of legal insufficiency. Turning first to petitioner's conviction for sexual abuse in the first degree,[7] DC testified that petitioner touched DC's penis in petitioner's car during a trip to Cranberry Lake, thus establishing the element of "sexual contact." It is well settled that "'the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction.'" *United States v. Frampton*, 382 F.3d 213, 222 (2d Cir. 2004) (citation omitted).

Moreover, petitioner's objection to the evidence establishing DC's physical helplessness–DC's testimony that he was asleep when petitioner first touched his penis-is meritless. According to New York law, "[i]t is well established that physical helplessness is defined broadly and may include a sleeping victim." *People v. Manning*, 81 A.D.3d 1181, 1181 (3d Dep't 2011); *accord People v. Mesko*, 150 A.D.3d 1412, 1414 (3d Dep't 2017); *People v. Williams*, 94 A.D.3d 1555, 1555-56 (4th Dep't 2012). Evidence that DC subsequently woke up and pretended to be asleep as petitioner continued to touch him does not alter his initial state of physical helplessness. *See*

---

[7]Sexual abuse in the first degree is committed when a person "subjects another person to sexual contact . . . [w]hen the other person is incapable of consent by reason of being physically helpless." NY Penal Law § 130.65(2).

*Williams*, 94 A.D.3d at 1555-56 ("the testimony of the victim that she was asleep when defendant began touching her was legally sufficient to establish the element of physical helplessness").  Nor did any purported lack of evidence that petitioner "restrained" DC affect the legitimacy of petitioner's conviction, as the elements of first-degree sexual abuse were satisfied because petitioner first began touching DC's penis while DC was asleep, i.e., "physically helpless and unable to consent to such conduct." *Kelsey*, 174 A.D.3d at 964. The statute does not require additional proof that the victim was restrained.  As for the purported inconsistencies between DC's trial testimony and his prior statements, the Appellate Division correctly found that any inconsistencies in the victims' testimony were "minor," "were thoroughly explored on cross-examination[,] and presented credibility questions to be resolved by the jury." *Kelsey*, 174 A.D.3d at 964.

The evidence also supported petitioner's conviction for attempted[8] first degree sexual abuse of JD.  JD testified that he was awakened by petitioner's hand on JD's stomach, as it was moving toward JD's penis. (T 485-87, 526).  Petitioner corroborated this account in his controlled call.  (T 953, 990-94, 1002).  Based on this evidence, the jury could have rationally concluded that petitioner came "very near to the completion of the intended crime" of touching JD's penis while he was asleep.

Petitioner's argument that the crime of attempted sexual abuse is a "legal impossibility" falls short.  In the case cited by petitioner, *People v. Cecunjanin*, 16 N.Y.3d 488 (2011), the Court of Appeals found that the victim could not be deemed

---

[8]"A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." NY Penal Law § 110.00.

"physically helpless" under the statute because, although drunk, she was able to "block" the defendant from fondling her. The court thus concluded that the conviction for attempted sexual abuse must be vacated, because the victim was not physically helpless at the moment she prevented the defendant from fondling her. *Id.* at 492. The *Cecunjanin* facts are readily distinguishable from this case, wherein JD testified that he was asleep, and thus physically helpless, when petitioner first began touching him. Importantly, the *Cecunjanin* court did not hold that a conviction for attempted sexual abuse was a legally impossibility, but merely that it could not be upheld based on the underlying facts of that case.

With respect to petitioner's conviction for forcible touching,[9] the Appellate Division properly concluded that DC's testimony petitioner touched DC's penis "established the requisite contact to support the guilty verdict." *Kelsey*, 174 A.D.3d at 964. *See People v. Guaman*, 22 N.Y.3d 678, 681-85 (2014) (holding that "any bodily contact involving the application of some level of pressure to the victim's sexual or intimate parts qualifies as a forcible touch," and that "rubbing" the victim's intimate parts "easily meets this test."). Although DC did not testify regarding the specific pressure that petitioner applied, the jury could have rationally concluded that petitioner applied "some level of pressure" (T 1118), based on DC's testimony that petitioner kept his hand on DC's penis for an extended period of time and continued to do so even as DC attempted to squirm away from him (T 319, 350, 368).

---

[9]Forcible touching is committed when a person "intentionally, and for no legitimate purpose . . . forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire." N.Y. Penal Law § 130.52(1).

Petitioner argues that the "forcible touching conviction remains . . . legally insufficient for lack of forcible compulsion[,]" emphasizing the government's failure to establish "restraint." (Pet. MOL at 7, 33-34). Petitioner appears to confuse the crime of forcible touching with the term "forcible compulsion," which is defined in the NY Penal Law as "to compel by" either (a) "use of physical force"; or (b) "a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person . . . ." N.Y. Penal Law § 130.00(8). Forcible compulsion is not, however, an element of forcible touching.

Finally, the evidence sufficiently supported petitioner's convictions for endangering the welfare of a child. As respondent points out, "under New York law, where the evidence is legally sufficient with respect to a conviction for sexual abuse, 'it necessarily also was legally sufficient with respect to the conviction of endangering the welfare of a child.'" *Martinez v. Colvin*, No. 1:17-CV-757, 2018 WL 7047148, *10 (S.D.N.Y. Nov. 6, 2018), *report-recommendation adopted*, 2018 WL 6649608 (S.D.N.Y. Dec. 19, 2018). Accordingly, petitioner is not entitled to habeas relief based on his legal insufficiency claims.

## IV.    Constitutionality of Sexual Abuse Statute

Petitioner also asserts that the definition of physical helplessness under Penal Law § 130.00(7) is "unconstitutionally vague" as applied to the first-degree sexual abuse statute, Penal Law § 130.65(2). Respondent contends that this claim is both unexhausted and meritless. The court agrees that petitioner's claim is unexhausted, and ultimately barred by procedural default.

Petitioner failed to raise this claim in his brief on direct appeal to the appellate

division. Although he did raise the claim in his leave application to the Court of

Appeals and in his state habeas petition, these filings did not properly exhaust the

claim. *See Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) ("[C]onsideration before

the Court of Appeals is discretionary review. . . . Presenting a claim for the first time to

a state court of discretionary review is insufficient to exhaust the claim unless the court

considers it."); *Garcia v. Laclair*, No. 06 Civ. 10196, 2011 WL 1097414, at *13

(S.D.N.Y. Jan. 3, 2011), *report and recommendation adopted*, 2011 WL 1046058

(S.D.N.Y. Mar. 22, 2011) (finding state habeas proceeding not a proper avenue for

exhaustion where there is no indication that "practicality and necessity" prevented the

claims from being raised on direct appeal). This unexhausted claim is also procedurally

barred, because petitioner has no state forum in which he can now raise the claim.

Petitioner cannot overcome this procedural bar because he cannot satisfy the

cause-prejudice test. In particular, petitioner failed to exhaust any argument that his

appellate counsel erred by not raising this claim on direct appeal; thus he cannot

establish counsel's failure as the cause for his default. *See Edwards v. Carpenter*, 529

U.S. at 452. Accordingly, petitioner's claim is barred by his procedural default, and

should be dismissed.

## V.    **Completeness of the Trial Record**

Petitioner contends that the trial record was incomplete because certain sidebar

and chambers conferences were held off the record. (Pet. MOL at 3). To the extent that

petitioner asserts a violation of New York Judiciary Law § 295, this claim is based

solely on state law and is not cognizable on federal habeas review. See *Chappelle v.*

*Griffin*, No. 9:16-CV-1130, 2017 WL 2601885, at *6 n.2 (N.D.N.Y. June 15, 2017).

To the extent that petitioner is raising a federal constitutional claim, respondent argues this claim is barred on adequate and independent state law grounds. Petitioner failed to raise the claim that the trial record was incomplete on direct appeal. Although petitioner briefly mentioned the claim in his *pro se* reply brief to the Appellate Division relative to his ineffective counsel claim, "a claim of error first raised in a reply brief is not properly presented to the reviewing court." *Lurie*, 228 F.3d at 124.

Petitioner did, however, raise this claim in his subsequent CPL § 440 motion. (SR 1196-97). The trial court denied the claim pursuant to CPL § 440.10(2)(c), finding that petitioner should have raised the claim on direct appeal. (SR 1716). Pursuant to § 440.10(2)(c), "New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003). Respondent argues that § 440.10(2)(c) constitutes an adequate and independent state-law ground precluding federal habeas review of petitioner's claim.

There is "no dispute" that § 440.10(2)(c) is "firmly established and regularly followed" by New York courts. *Pierotti v. Walsh*, 834 F.3d 171, 177 (2d Cir. 2016) (collecting cases). However, "even if a procedural bar is 'firmly established and regularly followed [by the state courts],' a petitioner may still challenge the adequacy of the bar in exceptional cases where the state court's application of the rule was 'exorbitant,' 'render[ing] the state ground inadequate to stop consideration of a federal question.'" *Id*. (quoting *Lee v. Kemna*, 534 U.S. at 376).

In this case, where the court is "assessing the contours of a state court's denial of

collateral review because of a petitioner's failure to raise an issue on direct appeal," the court will "focus on" "whether state caselaw indicated that compliance with [CPL § 440.10(2)(c)] was demanded in the specific circumstances presented[.]" *Id.* Petitioner argues that in this instance, § 440.10(2)(c) constituted an adequate bar to petitioner's claim at the state level, because the claim is "clearly record-based," and should have been raised on direct appeal. (Resp. MOL at 42-43). Based on a review of the relevant state caselaw, this court agrees that petitioner's challenge is one that should have been raised on direct appeal. *See, e.g., People v. Rick*, 224 A.D.2d 790, 790 (3d Dep't 1996) (rejecting, on the merits, claim that criminal defendant was prejudiced by the failure to record sidebar conference at trial); *People v. Blair*, 25 A.D.3d 1018, 1019 (3d Dep't 2006) (same); *People v. Yanowitch*, 227 A.D.2d 225, 225 (1st Dep't 1996) (rejecting criminal defendant's claim that he was deprived of his right to appellate review due to an inadequate record, specifically the failure to record sidebars and missing pages from two witnesses' testimony). Because petitioner has not offered any cause or prejudice to excuse his procedural default, nor has he established a miscarriage of justice, the claim is barred from habeas review.

Even if § 440.10(2)(c) was "inadequate" to foreclose federal habeas review of petitioner's challenge to the completeness of the trial record, it alternatively fails under AEDPA review.[10] Although the Supreme Court has held that the state is generally required to provide a "record of sufficient completeness" to permit adequate appellate

---

[10]The trial court alternatively denied petitioner's claim on the merits. Accordingly, the claim is subject to the limited review available under AEDPA, i.e. whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See* 28 U.S.C. § 2254(d).

review, *Mayer v. Chicago*, 404 U.S. 189, 194 (1971), "the Supreme Court has never held that due process requires verbatim transcription of the entire proceedings of a trial," *Chappelle*, 2017 WL 2601885 at *6 n.2. Therefore, the Appellate Division's rejection of this claim was not contrary to clearly established Supreme Court precedent. *See Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (when a petitioner raises an issue that the Supreme Court has not "squarely address[ed]" or "clear[ly] answer[ed]," habeas relief is unavailable). Accordingly, petitioner is not entitled to habeas relief on this basis, and the petition should be dismissed as to this claim.

## VI.  **Preclusion of Evidence**

Petitioner contends that the trial court violated his right to present a defense by precluding the introduction of certain evidence. (Pet. MOL at 38-40). Petitioner failed to raise this claim on direct appeal, but instead raised it in his § 440.10 motion. The trial court denied petitioner's claim as procedurally barred under CPL § 440.10(2)(c), finding that it should have been raised on direct appeal. (SR 1716). Thus, respondent argues, petitioner's claim is barred from habeas review on adequate and independent state law grounds. (Resp. MOL at 44). To the extent petitioner's claims were based on the trial record, this court agrees.

To the extent that petitioner's claim falls outside the scope of the record adduced at trial, the state court alternatively denied it as meritless. (SR 1716). For the following reasons, this court does not find that the state court's decision unreasonably applied clearly established Supreme Court law.

### A.    **Dr. Smith's Testimony**

Petitioner claims that Dr. Smith's "medical report and mental health testimony

were deceptively precluded from evidence." (Pet. MOL at 39-40). Specifically, he contends that Dr. Smith's testimony was precluded because the prosecutor accused defense counsel of failing to disclose Dr. Smith's written report. (*Id.*). However, this is not the case. Dr. Smith was included on the defense witness list, along with 33 other potential witnesses. (SR 1549-50). During the course of the trial, the prosecutor complained that Dr. Smith's report, which she had yet to receive in discovery, constituted *Rosario* evidence and was subject to disclosure for impeachment purposes. (T 15-16, 23, 408-13, 797, 804-06). Defense counsel argued that the report had already been disclosed, and the dispute was resolved when counsel agreed to email Dr. Smith's report to the prosecutor. (T 805-06). At no time during the trial, however, did the defense attempt to call Dr. Smith as a witness or otherwise introduce his medical report as evidence. As such, the court never had an opportunity to preclude his testimony. Thus, no reasonable interpretation of the record suggests that petitioner was in any way precluded from introducing Dr. Smith's testimony and/or report as evidence at trial.

### B.    Car Photographs

Petitioner claims that the court improperly precluded certain photographs of his car because they were not timely disclosed. (Pet. MOL at 38-40). Specifically, during petitioner's case in chief, outside the presence of the jury, the prosecutor stated that she would object to counsel's proposed admission of photographs of petitioner's car as evidence, arguing that petitioner had not timely produced the photographs in response to the prosecutor's pre-trial demands. Defense counsel argued that the photographs had been timely produced, and the court ultimately reserved decision on the issue. (T 793-802, 804). The prosecutor raised the issue again during petitioner's direct examination,

28

when defense counsel sought to introduce a photograph of petitioner in the car with his feet on the steering wheel. (T 898-911). The parties argued over whether the photograph had been timely produced, and the court stated, "I'll figure it out," before calling a recess. (T 911).

The transcript reflects that the following representations were made immediately after the court came back on the record:

> Judge Catena: Mr. Portale, you've had a change of mind?
>
> Defense Counsel: Judge, I spoke to [the prosecutor]. We agreed I would speak to [petitioner], and on consent we'll withdraw our application.
>
> Judge Catena: Okay. Very good. Anything else at this point before we proceed?
>
> Prosecutor: No.
>
> Defense Counsel: No.

(T 911).

Based on the aforementioned, petitioner has no basis on which to assert that his right to present a defense was violated. The record establishes that defense counsel, with the consent of petitioner, expressly agreed to withdraw his application to introduce the photograph. Thus, the court never had an opportunity to rule on whether the photograph was admissible, and petitioner's claim is without merit.

## VII.  Ineffective Assistance of Trial Counsel

Petitioner has submitted an unremitting number of grounds upon which he argues he is entitled a writ of habeas corpus based on the ineffective assistance of his trial counsel. Many of these claims were raised in petitioner's § 440.10 motion, upon which

the trial court concluded that they were record-based claims that should have been raised on direct appeal.  To the extent these claims are procedurally barred, it is discussed in further detail below.

The Appellate Division and § 440 court also denied petitioner's claims on the merits.  The relevant federal law governing ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984).  To succeed, a defendant must satisfy the two-pronged test set forth in *Strickland.*  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment."  *Hudson v. New York,* No. 07-CV-1327, 2007 WL 3231970, at *2-3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington,* 466 U.S. at 687).  Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland v. Washington,* 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant.  *Id.* at 692-93.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  In making the determination

30

whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

Upon review of an habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)).  Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1).  *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111 (2009)).

This court will address each of petitioner's ineffective assistance of counsel claims in turn.

### A.    Failure to Move to Dismiss Forcible Touching

Petitioner claims that defense counsel should have moved to dismiss the count of forcible touching, because DC stated in an interview prior to trial that petitioner did not "restrain" him.  (Pet. MOL at 33-34).  Even if petitioner's claim was not procedurally barred on adequate and independent state law grounds, as argued by the respondent, the court agrees that he is not subject to habeas relief on this basis.  At the outset, the

record establishes that petitioner's former defense attorney, Gary Greenwald, Esq., did move to dismiss this count. (SR 160). More to the point, petitioner's argument fails because the crime of forcible touching does not require proof of restraint, such that DC's testimony would have supported such a motion. As previously discussed, under New York law "any bodily contact involving the application of some level of pressure to the victim's sexual or intimate parts qualifies as forcible touch." *People v. Guaman,* 22 N.Y.3d at 681-85. There is no requirement under the statute that the victim be "restrained," thus any motion brought by defense counsel on this basis would have been meritless. Accordingly, this is not a basis on which petitioner may seek habeas relief. *See Flowers v. Ercole*, No. 06 Civ. 6118, 2009 WL 2986738, at *20 (S.D.N.Y. Sept. 18, 2009) ("Failure to make a meritless argument does not amount to ineffective assistance.") (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)).

### B.   Failure to Preserve Legal Sufficiency Claim

Petitioner asserts, as he did on direct appeal, that counsel erred by not moving for a trial order of dismissal in order to preserve his legal sufficiency claim. (Pet. MOL at 6). The Appellate Division considered this argument on the merits, concluding that they did "not find that counsel was ineffective in failing to move for a trial order of dismissal." *Kelsey,* 174 A.D.3d at 966.

The Appellate Division also directly addressed the petitioner's underlying legal sufficiency claim, notwithstanding counsel's "failure" to move for a trial order of dismissal. Specifically, the Appellate Division found that, although the legal sufficiency claim was unpreserved, the court would necessarily evaluate the legal sufficiency claim by evaluating a weight-of-the-evidence claim. *Kelsey,* 174 A.D.3d at

32

962-63; *see also Parker v. Ercole*, 666 F.3d 830, 833-35 (2d Cir. 2012) ("to the extent the Appellate Division decided that [petitioner's] conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict."). Accordingly, even if the court found that counsel's failure to make the motion fell below *Strickland* standards, which it does not, "the petitioner suffered no prejudice as a result because the Appellate Division considered, and rejected, the merits of petitioner's claim[.]" *Sparrow v. Griffin*, No. 9:16-CV-204(TJM/ATB), 2017 WL 2912518, at *15 (N.D.N.Y. Apr. 6, 2017), *report and recommendation adopted*, 2017 WL 2912497 (N.D.N.Y. July 7, 2017); *Jackson v. Perez*, No. 9:15-CV-00688 (JKS), 2016 WL 6208552, at *5 (N.D.N.Y. Oct. 24, 2016) ("[B]ecause the Appellate Division examined the merits of Jackson's legal insufficiency claim notwithstanding the lack of preservation, Jackson cannot demonstrate that he was prejudiced by counsel's [failure to properly preserve the legal insufficiency issue for appellate review.]"). Accordingly, petitioner is not entitled to habeas relief on this basis.

### C. Failure to Object to Evidence of Prior Bad Acts/Failure to Request Limiting Instructions

Petitioner argues that counsel was also ineffective for failing to object to the introduction of his prior bad acts. (Pet. MOL at 15-19). Specifically, on direct appeal petitioner claimed that counsel erred by failing to challenge the admission of testimony regarding the padiddle game, of petitioner "grabbing" JD's penis in 2013, and of petitioner touching JD's groin while wrestling with him on the Cranberry Lake trip. The Appellate Division addressed this argument on the merits, concluding that "such evidence was admissible to show defendant's intent and motive, provide necessary

background and complete the victims' narratives[.]" *Kelsey*, 174 A.D.3d at 965.  The

court also recognized that the "County Court balanced the probative value of this

testimony against its prejudicial effect." *Id.*  Last, the court found that petitioner "failed

to show that defense counsel's failure to object to certain undesirable testimony was not

a purposeful choice made to avoid drawing further attention to it. *Id.* at 966.  This was

not an unreasonable application of clearly established federal law warranting habeas

relief.

Under New York law, the prosecution may introduce evidence regarding prior

bad acts and/or uncharged crimes when it is relevant to a material issue other than a

defendant's propensity to commit the act or crime, and its probative value outweighs

the risks of undue prejudice. *See People v. Dorm*, 12 N.Y.3d 16, 19 (2009) (citing

*People v. Molineux*, 168 N.Y. 264, 264 (1901) (evidence may be used to prove motive,

intent, lack of mistake or accident, identity, or common scheme or plan") ). "Where

there is a proper nonpropensity purpose, the decision whether to admit evidence of [a]

defendant's prior bad acts rests upon the trial court's discretionary balancing of

probative value and unfair prejudice.  In cases involving allegations of sexual abuse,

evidence of uncharged crimes is admissible to 'complete the victim's narrative,

describe the events leading up to the charged crime and explain the relationship

between defendant and the victim, as well as to place the events in question in a

believable context and explain the victim's delay in reporting [the] defendant's

conduct.' " *Martinez v. Colvin,* 2018 WL 7047148, at *15 (quoting *People v. Haidara*,

65 A.D.3d 974, 974 (1st Dep't 2009) ("Although the evidence was extensive, it was not

unduly inflammatory and the court's thorough limiting instruction was sufficient to

minimize any possible prejudice") (citations omitted)).  Petitioner does not identify any

Supreme Court holding that renders New York's admission of prior bad acts

unconstitutional.  *Id.* at \*16 ("The Supreme Court has never decided whether the

admission of 'prior bad acts' or 'uncharged crimes" evidence would violate the due

process clause.") (citing *Estelle v. McGuire*, 502 U.S. 62, 75 & n.5 (1991) (expressing

"no opinion on whether a state law would violate the Due Process Clause if it permitted

the use of 'prior crimes' evidence to show propensity to commit a charged crime")); *see

also Fernandez v. Ercole*, No. 14-CV-2974, 2017 WL 2364371, at \*4 (S.D.N.Y. May,

31, 2017).

Notwithstanding the fact that evidence of prior bad acts and uncharged crimes

are admissible under New York law, the record establishes that trial counsel objected to

the admission of such evidence as early as the very first day of trial, as soon as the

prosecutor indicated that she wished to cross-examine petitioner regarding the padiddle

game and the 2013 incident.  (T 35-37, 38-44). The court reserved decision on the

issue.  (*Id.*).  However, the following day petitioner delivered his opening statement, in

which he repeatedly advocated for his good character and law-abiding nature, and

asserted that no other incidents of abuse had ever been alleged against him.  (T 240-42,

246, 249, 251-53, 256-57).  The court then held an off-the-record conference, after

which the court asked the prosecutor to assert her position on the record, which she did

in stating that petitioner had "clearly opened the door for [the] case in chief to be able

to explore any prior bad acts that he's done because he's said he has a stellar reputation,

and he has never been accused by anyone." (T 260).  Defense counsel responded, "I

respect your ruling, Judge.  We'll stand by your ruling."  (*Id.*).  The court ultimately

agreed with the prosecutor, finding her position to be "correct." (*Id.*).

Following the remainder of petitioner's opening statement, the parties had another off-the-record conference. (T 276). The court then "put on the record" that they had "reviewed a few issues," and that defense counsel had "indicated to the court that you're not looking for any instruction, limiting instruction, from the court on potential evidence that [the prosecutor] may put in with her next witness with respect to . . . [t]wo games and wrestling" between petitioner and the two victims. Defense counsel stated, "That's correct, Judge." (T 276.).

Based on the record before this court, the Appellate Division's decision as to this issue did not unreasonably apply *Strickland*. Despite defense counsel's efforts to preclude evidence of prior bad acts, petitioner's remarks during his opening statement all but cemented the admissibility of this evidence under New York law. While defense counsel apparently, eventually conceded this point to the court, his failure to pursue a meritless argument did not amount to ineffective assistance. *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

Likewise, petitioner has failed to overcome the "strong presumption" that defense counsel's failure to object to or request a limiting instruction "derived . . . from trial strategy." *Acevedo v. Capra*, 600 F. App'x 801, 802-03 (2d Cir. 2015). "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Strickland*, 466 U.S. at 690). Accordingly, petitioner has failed to establish that he received ineffective assistance of counsel on this basis.

### D.    Waiving the *Huntley* Hearing/Failure to Object to Controlled Call

Petitioner argues that counsel was ineffective for waiving the *Huntley* hearing, and for not objecting to the controlled call at trial. (Pet. MOL at 19-23).  The Appellate Division rejected this claim on the merits, finding that the record suggested that petitioner had "'extensive discussions' with defense counsel regarding the controlled call, and defendant instructed counsel to waive the hearing." *Kelsey,* 174 A.D.3d at 965.  The court also found no evidence to show that defense counsel's waiver was "not a strategic decision in light of his trial strategy." *Id*.  With respect to petitioner's contention that counsel failed to object to his statements made during the call as involuntary, in light of his alleged mental capacity, the trial court concluded that "counsel cannot be faulted for not making an objecting that would have had little chance of success." *Id.*

On the record before this court, there is no basis to find that habeas relief is warranted on this claim.  At the outset, petitioner affirmatively waived the right to his *Huntley* hearing, on the record in open court, stating his understanding of the ramifications of his waiver and denying that he had any questions.  (SR 436-37).  *See Rosa v. Napoli*, No. 9:09-CV-00687 (TJM), 2011 WL 6103473, at *7 (N.D.N.Y. Dec. 7, 2011) (rejecting ineffective assistance claim where record established that counsel and petitioner "agreed to waive [*Huntley*] hearing" after further discussion).  Moreover, petitioner has failed to rebut the presumption that counsel had a strategic reason for waiving the hearing.  *Id.* ("Alternatively rejecting the same ineffective assistance claim because this argument relates to counsel's tactical or strategic choices, which are 'virtually unchallengeable' in the context of federal habeas corpus proceedings.")

(quoting *Strickland*, 466 U.S. at 690; *Campbell v. Greene*, 440 F. Supp. 2d 125, 150 (N.D.N.Y. 2006).

Nor was the Appellate Division's conclusion that any objection to the voluntariness of the call would have had "little chance of success" an unreasonable one. As the respondent points out in their brief, the only support for the involuntariness claim was petitioner's own self-serving statements asserting that he was incompetent at the time of the call. Accordingly, defense counsel did not object to the controlled call as involuntary, perhaps realizing that such an objection would only serve to highlight the incriminating statements made therein. Instead, defense counsel addressed the controlled call through his direct examination of petitioner, asking petitioner to explain the context of each statement made during the call, and attempting to show how these statements were misconstrued, and misrepresented, by the prosecutor. Defense counsel's strategic decisions do not constitute ineffective assistance. *See Quinones v. Miller*, 224 F. App'x 44, 49 (2d Cir. 2007) (finding that counsel could have made a strategic decision not to object, believing that an objection would only serve to highlight the statement to the jury); *see also United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) ("Decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics,' and thus are 'virtually unchallengeable' absent exceptional grounds for doing so.") (internal citations omitted).

### E.    Failure to Present Expert Testimony Regarding Voluntariness of the Controlled Call/Failure to Request a Jury Charge on Voluntariness

Petitioner argues that counsel erred by failing to present an expert witness at trial regarding the voluntariness of his statements reflected in the controlled call, and for

failing to seek a jury charge on voluntariness. (Pet. MOL at 26-27, 31-33). Petitioner raised these claims in both his direct appeal and his § 440 motion, and both courts denied these claims on the merits. The state courts decisions did not unreasonably apply *Strickland.*

As previously discussed, issues of trial strategy, such as the decision whether or not to call a particular witness, "are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (citation omitted); *King v. Griffin*, No. 9:17-CV-321(MAD), 2018 WL 1940419, *12 (N.D.N.Y. Apr. 23, 2018) (citing *Greiner*, 417 F.3d at 323) ("[S]econd-guessing trial counsel's decision about retaining an expert witness is exactly the type of strategic choice about which courts reviewing habeas petitions have been cautioned."). Instead of focusing on the voluntariness of petitioner's statements during the controlled call, the record makes clear that defense counsel attempted to convince the jury that petitioner's statements had been taken out of context and misconstrued by the prosecutor. It is also a reasonable interpretation of the record that defense counsel opted to distract focus from petitioner's mental illness, as it carried the risk that the jury might conclude petitioner's purported mental instability during the call was reflective of his mental status during the Cranberry Lake trip four months earlier.

Not only has petitioner failed to establish that counsel's strategy in declining to call such a witness was unreasonable, but he has not presented this court with any proof that a witness, who would have qualified as an expert, was available and willing to testify regarding petitioner's involuntariness. *See Calderon v. U.S.*, Nos. 16-CV-7536, 10-CR-392-33, 2017 WL 11473376, *3 (S.D.N.Y. Mar. 13, 2017) ("[T]o succeed on an

ineffective assistance claim [based on failure to interview and call a witness], a petitioner must produce evidence explaining what the witness would have testified about and that the witness would have actually testified.") (collecting cases).

Moreover, the Appellate Division reasonably determined that counsel had no basis to ask for a jury charge on the voluntariness of the call, as petitioner's testimony, and the call itself, did not raise issues of involuntariness. Counsel cannot be faulted for declining to make a meritless motion, and therefore petitioner is not entitled to habeas relief on this basis.

### F.    Conspiring to Prematurely Rest the Case

Petitioner claims that during the trial, without his knowledge or consent, defense counsel worked out a "deal" with the court and prosecutor in which petitioner was promised a seven-year sentence in return for agreeing to prematurely rest his case without calling additional witnesses. (Pet. MOL at 36-37, 42). Petitioner raised this claim for the first time four years after the trial, in his § 440.10 motion, and the court denied it on the merits. (SR 1260-67, 1714-17).

The state court's decision denying petitioner's claim of a conspiracy was not contrary to, or an unreasonable application of, established Supreme Court law. Petitioner submitted two affidavits with his § 440.10 motion in support of his assertion. Dr. Barretto, close friend and "confidant" of the petitioner, prepared a December 2019 affirmation in which he stated:

> Following the conviction, I confronted attorney Portale. He said that the judge was planning to sentence Michael to the maximum punishment of 11 years in retaliation for Michael refusing to take a plea of 10 years' probation with no jail

> time that the judge wanted him to take. Regardless, Atty
> Portale said that he cut a deal so that the judge would only
> sentence Michael to 7 years, if he rested the case that day.
> I was standing with Michael's brother John, girlfriend
> Katy, and friend Lou when Portale told us . . . .

(SR1538).

Petitioner's brother, John Kelsey, also prepared a December 2019 affidavit, in

which he claimed, in part, that the prosecutor "got a hold of compromising information

about [defense counsel] and used it to blackmail him to throw [petitioner's] case." (SR

1542). John Kelsey further asserted that:

> Following Mike's conviction [defense attorney] Portale told me
> personally that he cut a deal with the District Attorney, but that
> the District Attorney had reneged on whatever it was that they
> agreed to. Portale also told me, following Mike's conviction, that
> Mike would be sentenced to seven years, which is exactly what
> the judge sentenced him to five months later. I believe that Portale
> did work out a deal with the DA, without telling Mike, that
> somehow involved Portale resting the case following Mike's
> testimony and not calling other witnesses, and that if convicted
> the judge would only sentence him to seven years.

(SR 1542). Other than these affidavits, which were not prepared until years after the

fact and constitute inadmissible hearsay, petitioner has failed to substantiate his claim

of conspiracy, much less explain why he did not raise this issue at any earlier

opportunity. The trial court did not err by denying petitioner's claim to this effect, nor

is this court obligated to grant petitioner habeas relief based on unsupported hearsay

allegations. *See Covington v. Warden, Five Points Corr. Facility,* No. 11-CV-8761,

2014 WL 7234820 (S.D.N.Y. Dec. 8, 2014) (denying habeas petition and noting that

the trial court did not err by denying petitioner's motion to set aside the verdict because

41

it relied on inadmissible hearsay); *D'Ercole v. United States*, 361 F.2d 211, 212 (2d Cir. 1966) (affidavit containing hearsay statements could not support habeas petition). Accordingly, petitioner is not entitled to habeas relief on this basis.

### G.    Failure to Prepare for Trial

Petitioner claims that defense counsel failed to adequately prepare for trial, including his failure to meet with and/or prepare the petitioner. Petitioner also claims that defense counsel failed to prepare and/or call certain lay witnesses at trial. Petitioner raised these claims in his § 440.10 motion, and the trial court denied them on the merits. This was not an unreasonable decision, and petitioner is not entitled to a writ of habeas corpus based on any purported failure by counsel to adequately prepare for trial.

Despite the fact that petitioner's trial attorney was retained shortly before the start of the trial, the record evidences that counsel was well versed in the nuances of the charges in the indictment, petitioner's defense, and the evidentiary issues at hand. Among other things, defense counsel engaged in an extensive cross-examination of the victims, in which he sought to impeach them with their prior inconsistent statements to law enforcement officers. Counsel also skillfully maneuvered petitioner through his direct testimony, in which petitioner attempted to offer innocent explanations for his controlled-call statements. Moreover, it is clear from both the trial transcript and the emails attached to petitioner's § 440.10 motion that defense counsel had multiple, extensive discussions and meetings with petitioner prior to and during the trial.

Furthermore, defense counsel's decision to call only three of the 34 witnesses from the witness list at trial did not constitute the ineffective assistance of counsel. The

record establishes that those witnesses whom defense counsel did call were prepared

and sufficiently examined at trial.  Counsel also subpoenaed and prepared a handful of

other witnesses on the list; however they were ultimately not called to testify.

Petitioner has failed to submit any evidence that the anticipated testimony from any of

the other named witnesses for the defense was admissible or noncumulative, or that

there is a reasonable probability that calling these witnesses would have changed the

verdict.  As previously discussed, "[t]he  decision to call, or not call, a witness is a

classic example of trial strategy," and the decision of "whether to call a specific

witness–even ones that might offer exculpatory evidence–is ordinarily not viewed as a

lapse in professional representation.' " *Moore v. Kirkpatrick*, No. 09-CV-0457, 2011

WL 1233124, at *14 (W.D.N.Y. Mar. 30, 2011) (citing *United States v. Schmidt*, 105

F.3d 82, 90 (2d Cir. 1997) ).

 Petitioner also argues that defense counsel did not adequately prepare for the

prosecutor's cross-examination of the petitioner regarding emails he sent to Rich

Robbins, and that counsel failed to rehabilitate petitioner on redirect examination with

respect to the emails.  (Pet. MOL at 35-36).  The trial court denied petitioner's claim as

presented in his § 440.10 motion on the merits, and this decision did not unreasonably

apply *Strickland*.  Contrary to petitioner's arguments, the transcript reflects that defense

counsel was familiar with the contents of these emails, and that he rehabilitated

petitioner on redirect through a series of questions that allowed petitioner to provide

innocent explanations for the otherwise compromising email excerpts pointed out by

the prosecutor.  (T. 1013-16).  There is no evidence that defense counsel's approach to

addressing the emails–i.e. only focusing on certain portions of the emails–did not

amount to a strategic decision attempting to avoid "highlight[ing] for the jury the argument that counsel found objectionable." *Bierenbaum v. Graham*, 607 F.3d 36, 58 (2d Cir. 2010); *accord. People v. Taylor*, 1 N.Y.3d 174, 176-77 (2003). Accordingly, the petition should be dismissed as to this claim.

### H.    Denying Petitioner the Right to Represent Himself

Petitioner claims that defense counsel denied him the right to represent himself. (Pet. MOL at 27-28). Specifically, petitioner contends that on the second day of trial, counsel gave petitioner a note that cited "case precedent against hybrid-representation," which had been provided to defense counsel by the court. (SR 1235-36). It was then "communicated" to petitioner that "he was no longer permitted to serve as co-counsel." (*Id.*). This claim was raised in petitioner's § 440.10 motion, and denied on the merits. That decision did not unreasonably apply clearly established Supreme Court precedent.

Petitioner's claim is suspicious at best, considering there is no mention of petitioner being removed from his role as co-counsel anywhere in the trial transcript, and petitioner dubiously admits that "speculation remains" as to this claim. Moreover, "a criminal defendant has no constitutional or statutory right to represent himself as co-counsel with his own attorney." *Neree v. Capra*, No. 17-CV-5434, 2020 WL 2098097, at *6 (E.D.N.Y. May 1, 2020) (citing *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *People v. Rodriguez*, 95 N.Y. 2d 497, 501 (2000) ("A criminal defendant has no Federal or State constitutional right to hybrid representation")). "The right to self-representation and the assistance of counsel are separate rights depicted on the opposite sides of the same Sixth Amendment coin. To choose one obviously means to forego the other." *Id.* (quoting *U.S. v. Purnett*, 910 F.2d 51, 54 (2d Cir. 1990)).

Accordingly, the trial court was within its discretion to deny petitioner the right to act as co-counsel, and there is no evidence that defense counsel "denied" petitioner's request to act in this capacity in light of the court's determination.

## I.    Failure to Introduce *Brady* Witness Statements

Petitioner asserts that defense counsel failed to introduce the police statements of various witnesses at trial. (Pet. MOL at 28-30). Petitioner raised this claim in his § 440.10 motion, and the trial court denied the claim both on the merits and pursuant to CPL § 440.10(2)(c).

To the extent petitioner's claim is not barred on adequate and independent state law grounds, the trial court did not unreasonably deny it on the merits. As respondent points out, petitioner has failed to explain how the police statements at issue would have been admissible at trial. Of the statements petitioner identifies, only two related to witnesses who actually testified at trial. (Pet. MOL at 30 n.3.) As to those witnesses, their own prior statements could only have been employed to impeach the witness or refresh the witness's recollection, not admitted into evidence. Moreover, none of these third-party out-of-court statements could have been employed to impeach the victims, as "a trial witness may only be impeached by his own prior statements." *Browne v. Heath*, No. 11-CV-1078, 2014 WL 8390320, at *25 (E.D.N.Y. Aug. 25, 2014) (citing *People v. Dickerson*, 70 A.D.2d 623, 623 (2d Dep't 1979)), *report-recommendation adopted*, 2015 WL 1469182 (E.D.N.Y. Mar. 30, 2015). Accordingly, petitioner has not met his burden in establishing that counsel's performance fell below *Strickland* standards in this regard, and habeas relief is not warranted.

**J.     Counsel Failed to Properly Impeach the Victims**

Petitioner asserts that counsel failed to subject the victims to "meaningful adversarial testing" by, among other things, questioning their motives and highlighting inconsistencies in their statements.  (Pet. MOL at 28).  Petitioner raised this claim for the first time in his § 440.10 motion.  (SR 1139-48, 1159).  The trial court denied the claim pursuant to CPL § 440.10(2)(c), as well as on the merits.  Notwithstanding the trial court's alternative consideration of the merits of petitioner's argument,[11] the denial of this clearly record-based ineffective assistance of counsel claim under CPL § 440.10(2)(c) rests upon an independent and adequate state ground, and federal review of the claim is barred.  *See Murden v. Artuz*, 497 F.3d 178, 196 (2d Cir. 2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record," as was the case here, "a state court's reliance on subsection [440.10](2)(c) provides an independent and adequate procedural bar to federal habeas review."); *Sweet v. Bennett*, 353 F.3d 135, 139-40 (2d Cir. 2003) (noting that section 440.10(2)(c) acts as an independent and adequate state ground barring federal habeas review of ineffective assistance of counsel claim where the basis of a Sixth Amendment issue, regarding counsel's failure to adequately preserve an issue for appeal, involves alleged errors well established in the trial record).

The court may review this procedurally barred claim only if petitioner has demonstrated cause for the default and resulting prejudice, or a "fundamental

---

[11]The fact that a state court alternatively rules on the merits and a procedural bar does not necessarily mean that a claim is subject to federal habeas review on the merits. *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (citation omitted).

miscarriage of justice." Petitioner has established neither. Accordingly, Petitioner's record-based ineffective assistance of counsel claim is barred by procedural default, precluding habeas review.

### K.    Failure to Present Testimony from Dr. Smith

Petitioner claims that counsel erred in declining to call Dr. Smith as a witness at trial. (Pet. MOL 30-31). Dr. Smith, a forensic psychiatrist, submitted an unsworn report to petitioner's former defense attorney opining, among other things, that petitioner was not a pedophile. (SR 1552-68). Petitioner raised this claim in his § 440.10 motion, which the trial court denied on the merits.

As previously discussed, in order to succeeded on an ineffective assistance of counsel claim based on the failure to interview or call a witness, "a petitioner must produce evidence explaining what the witness would have testified about and that the witness would have actually testified." *Calderon*, 2017 WL 11473376, at *3. There is nothing in the record to suggest to the court that Dr. Smith was willing and/or available to testify on behalf of petitioner at his trial. Moreover, petitioner has not established that counsel lacked reasonable strategic grounds for declining to call Dr. Smith to testify. "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness," *Dunn v. Reeves*, ___ U.S. ___, 141 S. Ct. 2405, 2410 (2021), and reviewing courts must "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did," *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (citation and internal quotation marks omitted). As respondent points out, defense counsel may have reasonably decided that calling Dr. Smith would subject him to cross-examination that would

prove harmful to the defense, including the fact that Dr. Smith's conclusions were, in part, based on incorrect facts.[12]  Accordingly, counsel's strategic decision not to call Dr. Smith is not subject to second-guessing by this court, and habeas relief is not warranted as to this basis.

### L.    Failure to Introduce Photograph of Petitioner's Car

Liberally construed, petitioner's habeas petition raises the argument that counsel was ineffective for failing to seek the admission of a photograph of petitioner's car into evidence.  Petitioner raised this claim in his § 440.10 motion, which the trial court denied under CPL § 440.10(2)(c).  The trial court's decision constitutes an adequate and independent bar to habeas review, a procedural bar for which petitioner has not raised cause or prejudice to overcome, nor any indicia of actual innocence.  Accordingly, this claim is not subject to federal habeas review.[13]

### M.    Jury Instructions

Petitioner argues that counsel's representation was deficient as to his failure to propose, or object to, various jury instructions.  (Pet. MOL at 35).  Other than the jury charge pertaining to the voluntariness of the controlled call, which this court has already discussed, petitioner failed to raise the remainder of this record-based, sub-category of his ineffective assistance of counsel claim in his direct appeal.

---

[12]For example, Dr. Smith's conclusions were based, in part, on the incorrect premise that the victims were never interviewed by trained professionals from the state police on video.  (SR 1552-55).

[13]The trial court alternatively denied petitioner's claim on the merits.  If the district court were to find that petitioner's claim is not barred on independent and adequate and independent state-law grounds pursuant to CPL § 440.10(2)(c), this court alternatively finds that the claim does not warrant habeas relief under AEDPA standards for the reasons set forth in respondent's memorandum of law. (Resp. MOL at 80-82).

Accordingly, the claim is unexhausted but should be deemed exhausted and procedurally defaulted.  In the absence of cause and prejudice, or any evidence of actual innocence, habeas relief is not warranted on this basis.

## VIII.  **Prosecutorial Misconduct**

Petitioner argues that the prosecution engaged in misconduct by (1) violating their disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) introducing evidence of petitioner's prior bad acts and the controlled phone call.

Petitioner raised the *Brady* violation in his § 440.10 motion, arguing that the government failed to produce the police statements of several witnesses prior to the trial.  (Pet. MOL at 28-30).  The trial court denied the claim under CPL § 440.10(2)(c) because it was not raised on direct appeal, and alternatively on the merits.

Even if CPL § 440.10(2)(c) did not act as a procedural bar to federal habeas review of this claim, the trial court did not unreasonably apply Supreme Court precedent in dismissing the claim on the merits. "It is well settled that "as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not [committed a *Brady* violation] simply because it did not produce the evidence sooner." *United States v. Campbell*, 850 F. App'x 102, 109 (2d Cir. 2021) (quoting *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001).  Here, the record establishes that there were some pre-trial disputes over whether the government had produced all of the relevant *Brady* material to the defense, and the adequacy of the disclosures.  (SR 129-263).  On April 19, 2016, defense counsel emailed the prosecutor admonishing her for not yet producing LD's grand jury testimony.  (SR 1304).  Nevertheless, on the first day of trial, the court asked whether discovery had been completed, and defense

counsel did not raise any complaints about the status of the *Brady* material.  (T 15).
Nor did the defense complain that he did not have specific *Brady* material at any time
during the trial.  Accordingly, there is nothing in the record to support the premise that
defense counsel was not provided all relevant *Brady* material prior to the
commencement of trial.

In any event, there is no evidence that petitioner was prejudiced as a result of any
purported *Brady* violation by the prosecution. A *Brady* violation consists of three
factors: (1) "[t]he evidence at issue must be favorable to the accused, either because it is
exculpatory or impeaching"; (2) "that evidence must have been suppressed by the State,
either willfully or inadvertently"; and (3) "prejudice must have ensued." *Simpson v.
United States*, 693 F. App'x 33, 34 (2d Cir. 2017) (citing *Strickler v. Greene*, 527 U.S.
263, 281-82 (1999)).  As previously discussed, the majority of out-of-court police
statements would not have been admissible to impeach the government's witnesses, and
there is otherwise no indication that petitioner was prejudiced as a result of his failure
to obtain any *Brady* material from the prosecution.  Based on the foregoing, petitioner
has failed to show that the prosecutor committed a *Brady* violation subject to habeas
review.

Liberally construed, the petition also maintains that the prosecution engaged in
misconduct with respect to introducing evidence of petitioner's prior bad acts, as well
as the controlled phone call.  (Pet. MOL at 15-19, 21-23).  Petitioner raised these claims
in his § 440.10 motion, and the trial court denied them pursuant to § 440.10(2)(c).
Petitioner does not argue that any of the exceptions to procedural default apply, nor has
this court's review of the record revealed cause for his default or evidence of his actual

innocence.  Accordingly, this claim is procedurally barred from habeas review on adequate and independent state law grounds.

## IX.    **Ineffective Assistance of Appellate Counsel**

Petitioner argues, in largely general terms, that he was deprived of competent and effective appellate counsel.  To the extent petitioner argues that appellate counsel should have asserted the "gross negligence of trial counsel" and the "extensive errors and omissions that occurred . . . concerning prosecutorial and judicial misconduct wherein the [petitioner's] constitutional rights are alleged to have been violated," these vague and conclusory allegations are not cognizable as a basis for ineffective assistance on habeas review. *See Cabezudo v. Fischer*, No. 05-CV-3168, 2009 WL 4723743, at *12 & n. 5 (E.D.N.Y. Dec. 1, 2009) (denying claim of ineffective assistance of appellate counsel where petitioner did not present any evidence indicating that counsel omitted significant and obvious issues, while pursuing clearly and significantly weaker arguments; conclusory statements are not cognizable as a basis for claims of ineffective assistance).

Liberally construed, the petition contains some specific claims concerning appellate counsel's purported ineffectiveness, including counsel's (1) failure to file a CPL § 440.10 motion while his direct appeal was pending, and (2) failure to assert a *Brady* claim on appeal.  (Pet. MOL 3-4, 28-30).  Petitioner's writ of error coram nobis arguably raised both of these issues pertaining to appellate counsel's deficiencies. (SR 998-1005), which the Appellate Division denied in its January 23, 2020 decision and order (SR 96).

The general standard for ineffective assistance of counsel, articulated by the

Supreme Court in *Strickland v. Washington*, applies to both trial and appellate counsel. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (*Strickland* standard also applies to effectiveness of appellate counsel). While a defendant has the right to effective counsel on appeal, *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), in the appellate context, counsel is not required to advance every non-frivolous argument that could be made. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts*, 469 U.S. at 394); *see also Jones v. Barnes*, 463 U.S. 745, 75 (1983)). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

### A. § 440.10 Motion

Petitioner claims that appellate counsel was "deficient in failing to first file an Article 440 motion . . . wherein facts and circumstances not reflected in the record . . . could receive proper noticing and become part of the official record by which a proper appeal could ensue." (Pet. MOL at 4). Petitioner's claim assumes that he was entitled to counsel for a CPL § 440.10 motion in state court. However, it is well settled that petitioner does not have a constitutional right to counsel in post-conviction collateral proceedings. *See, e.g.*, *Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."); *Aviles v. Capra*, No. 13-CV-1153, 2014 WL 4805036, at *12 (E.D.N.Y. Sept. 26, 2014) ("Here, because there is no right to counsel to pursue collateral relief under § 440.10,

petitioner's claim that his appellate counsel should have expanded the record through a § 440.10 motion must fail"); *Diaz v. Smith*, 04 Civ. 1337, 2007 WL 946196, at *13 (S.D.N.Y. Mar. 27, 2007) ("However, the Supreme Court has 'never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions.' ") (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *Lugo v. Kuhlmann*, 68 F. Supp. 2d 347, 375-76 (S.D.N.Y. 1999) ("Finally, while [petitioner] was entitled to counsel on direct appeal, he had no constitutional right to counsel for a state collateral attack.") (collecting cases); *see also Colon v. Sheahan*, 13 Civ. 6744, 2016 WL 3919643, at *12 (S.D.N.Y. Jan. 13, 2016) ("Therefore, there is still no clearly established Supreme Court precedent recognizing a constitutional right to counsel in a collateral proceeding"), *report and recommendation adopted*, 2016 WL 3926443 (S.D.N.Y. July 14, 2016).  Accordingly, petitioner had no right to counsel submitting a § 440.10 motion on his behalf, and he may not seek habeas relief on this basis.

**B.    *Brady* Claim**

Petitioner also appears to argue that "appellate counsel failed to claim prosecutorial/police BRADY misconduct [sic]."  (Pet. MOL at 28).  Because this court has already found that petitioner's underlying *Brady* claim is meritless, appellate counsel cannot be found deficient for failing to raise it on direct appeal.  *See Harden v. Fields,* No. 9:18-CV-162 (MAD/CFH), 2021 WL 2445680, at *16 (N.D.N.Y. Apr. 16, 2021), *report and recommendation adopted*, 2021 WL 2439144 (N.D.N.Y. June 15, 2021) (quoting *Kalyon v. Hood*, No. 91-CV-107, 1991 WL 159079, at *1 (E.D.N.Y. June 30, 1991) ("Failure to raise a meritless issue on direct appeal does not constitute ineffective assistance of appellate counsel."); *Roberts v. Griffin*, No. 16-CV-5970, 2019

WL 456179, at *10 (E.D.N.Y. Feb. 5, 2019) ("Appellate counsel cannot be deemed ineffective for failing to raise a meritless argument") (internal quotations and citation omitted).  Accordingly, petitioner's ineffective assistance of appellate counsel claim on this basis should be dismissed.

## X.    **Sentencing Claims**

Petitioner asserts that his sentence was (1) unduly harsh and excessive under state law, (2) violated the Eighth Amendment because it was grossly disproportionate to the crime, (3) violated due process because it was intended to punish petitioner for insisting on a trial rather than pleading guilty, and (4) relied on a improper pre-sentence report.  (Pet. MOL at 41-47).  For the following reasons, petitioner is not entitled to habeas relief on these bases.

With respect to petitioner's "harsh and excessive claim," it is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law).  In this instance, the statutorily authorized sentence for Sexual Abuse in the First Degree, Penal Law § 130.65(2), is a determinate prison term of from 2 to 7 years followed by a term of post-release supervision. See Penal Law §§ 60.13; 70.02(1)(c); 70.02(3)(c); 70.80(1)(a)(b); 70.80(6); 70.80(9). Attempted Sexual Abuse in the First Degree, Penal Law §§ 110.05(6), 130.65(2), carries a determinate

prison term of from 1-1/2 to 4 years, followed by a term of post-release supervision, Penal Law §§ 70.80(1)(a), 70.80(3), 70.80(4)(a)(iv). Accordingly, the seven year sentence imposed on petitioner was well within the statutory range prescribed for the crimes of conviction, and he is not entitled to habeas relief on this basis.

Petitioner has also failed to establish that his sentence was so disproportionate to the crimes he was convicted of, that it implicated his Eighth Amendment right against cruel and unusual punishment. As previously set forth, petitioner's sentence was well within the range prescribed by state law, and the Supreme Court has rejected similar claims involving sentences that were far lengthier and crimes that were far less serious than the crimes committed here. *See Lockyer v. Andrade*, 538 U.S. 63, 66-69, 77 (2003); *Ewing v. California*, 538 U.S. 11, 19-20, 30-31 (2003); *see also Rummel v. Estelle*, 445 at 284-85 ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").[14] Thus, petitioner cannot prevail on his Eighth Amendment claim.

Petitioner next asserts that he was subjected to vindictive sentencing in violation of his due process rights, based on the disparity between the prosecutor's plea offers and the sentence actually imposed, as well as a purported threat that petitioner's sentence would be severe if he did not accept a plea deal. (Pet. MOL at 41-46). At the

---

[14]*See also United States v. Reingold*, 731 F.3d 204, 212-13 (2d Cir. 2013) ("As these cases make plain, at the same time that the Eighth Amendment prohibits grossly disproportionate sentences, it is rare that a sentence falling within a legislatively prescribed term of years will be deemed grossly disproportionate.") (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)); *accord. United States v. Polk*, 546 F.3d 74, 76 (1st Cir. 2008) (observing that "instances of gross disproportionality" are "hen's-teeth rare").

outset, any disparity between the plea offers made to the petitioner and the ultimate sentence imposed, by itself, does not constitute proof that the sentence was vindictive. The Supreme Court has "repeatedly held that the government 'may encourage a guilty plea by offering substantial benefits in return for the plea.'" *United States v. Mezzanatto*, 513 U.S. 196, 209-10 (1995) (quoting *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978)). Accordingly, it is well settled that "[a] discrepancy between an offered plea bargain and the actual sentence alone does not make out a claim of constitutionally impermissible vindictive sentencing." *Wheeler v. Phillips*, No. 05-CV-4399, 2006 WL 2357973, *11 (E.D.N.Y. Aug. 15, 2006); *accord. Scott v. Graham*, 16 Civ. 2372, 2018 WL 5257613, *20 (S.D.N.Y. Oct. 22, 2018).

Nor does defense counsel's purported comment that petitioner's sentence would be "severe" if he did not accept the plea offer support a claim of constitutional proportion. *See United States v. Evans*, 537 F. App'x 10, 11 (2d Cir. 2013) (in the context of plea proceedings, finding that "the only action that [petitioner] describes as a 'threat'- that his counsel 'threatened [him]' that if he withdrew his plea 'the Court could sentence [him] to an even longer sentence,' . . . was not a threat but instead advice that his attorney was ethically required to provide him.").

Last, petitioner asserts that the pre-sentence investigation report was prepared "in violation of his Fourth Amendment rights," "without due process," and against the "prohibition on double jeopardy." (Pet. MOL at 45-46). Petitioner's claim is unexhausted, because he did not raise it in his direct appeal or in his § 440.10 motion.

(*Id.*).[15]  Notwithstanding plaintiff's failure to exhaust his state court remedies, his claim

is meritless pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas

corpus may be denied on the merits, notwithstanding the failure of the applicant to

exhaust the remedies available in the courts of the State."); *see Rhines v. Weber*, 544

U.S. 269, 277 (2005).  Specifically, the laundry-list of constitutional violations set forth

by petitioner relative to his pre-sentence report, without any factual application to the

underlying record, is so vague and conclusory that it wholly fails to state a proper

ground for habeas relief. *See Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (A

habeas petitioner "bears the ultimate burden of proving by a preponderance of the

evidence that his constitutional rights have been violated.").  Accordingly, and for the

reasons more thoroughly set forth by the respondent in their memorandum of law,

petitioner's claim is meritless and should be dismissed. (Resp. MOL at 95).

## XI.    <u>Judicial Bias</u>

Petitioner claims that the sentencing judge was biased against him.  (Pet. MOL at

43-45, 47-48). Petitioner raised this claim in his § 440.10 motion, and the trial court

denied it on the merits.  That decision did not unreasonably apply clearly established

federal law.  To the extent petitioner challenges the court's participation in the plea

negotiations held throughout the trial, "[i]n New York State courts, a trial judge is

permitted to participate in plea negotiations with criminal defendants. While

participating in plea negotiations, a judge is permitted to discuss the possible

---

[15]At the time of filing, petitioner was apparently pursuing this claim in a "suit seeking
Declaratory Judgment filed in Supreme Court, Dutchess County, and . . . in the sentencing court as a
motion seeking suppression, redaction and issuance of a protective order.  (Pet. MOL at 45).

sentencing repercussions of a defendant's choice to go to trial rather than plead guilty." *McMahon v. Hodges*, 382 F.3d 284, 289 n.5 (2d Cir. 2004) (citations omitted). Otherwise, petitioner's suggestions of bias and/or a conflict of interest are entirely contradicted by the record before this court, and find no basis in law.  Accordingly, petitioner is not entitled to habeas relief and this claim should be dismissed.

      **WHEREFORE**, based on the findings above, it is

      **RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

      **RECOMMENDED**, that a certificate of appealability be **DENIED**.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 27, 2023

                                        Andrew T. Baxter
                                        U.S. Magistrate Judge